UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

BRITTANY (GILBERT) PIERS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

                                /

Case No.  1:15-CV-0242

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Brittany Piers seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 27 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.102–03.) She obtained a GED and has completed some college classes. (PageID.104–05.) Plaintiff was also previously employed as a cashier and job coach, but those positions did not rise to the level of past relevant work. (PageID.125–26.) Prior to the instant case, Plaintiff was denied benefits by an ALJ on May 19, 2011. (PageID.177–95.) While Plaintiff was

appealing that denial, she filed another application on June 14, 2011, which is the one at issue here. In the June 14 application, Plaintiff alleged that she had been disabled since September 1, 2008, due to major depressive disorder, post traumatic stress disorder, anemia, interstitial cystitis, chronic gastritis, migraines, sleep disturbances, anxiety, herpes, and gout. (PageID.345–56, 196–97.) Plaintiff's applications were denied on August 15, 2011, after which time she requested a hearing before an ALJ. (PageID.110.) On July 31, 2013, Plaintiff appeared with her counsel before ALJ Donna Grit for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.97–129.) In a written decision dated September 16, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.35–56.) On February 10, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.26–30.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2011.[2] (PageID.41.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative and post traumatic changes to right foot/necrosis and degeneration of fibular sesamoid bone; (2) interstitial cystitis; (3) migraine headaches; (4) posttraumatic stress disorder/anxiety; (5) depression; and (6) a history of substance abuse. (PageID.41.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.41–44.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking 6 hours of an 8-

---

[2]As the ALJ explained, this was the day after the Commissioner issued a final and binding decision denying Plaintiff benefits in a prior disability claim. The relevant inquiry, therefore, became whether Plaintiff was disabled after that decision. (PageID.38–39.)

>hour workday; sitting 6 hours of an 8-hour workday; no walking on uneven surfaces; avoid concentrated exposure to vibration, fumes, dusts, gases, odors, and poor ventilation; can understand, remember and perform simple tasks; make simple work-related decision and adjust to routine changes in the work place, but no interaction with the public and limited to less than frequent interaction with co-workers and supervisors.

(PageID.44.)  Continuing with the fourth step, the ALJ determined that Plaintiff had no past relevant work.  (PageID.49.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy Plaintiff could perform given her limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that there existed approximately 108,000 jobs in the state of Michigan as a mail sorter, office helper, and assembler that an individual similar to Plaintiff could perform.  (PageID.125–26.)  This represents a significant number of jobs.  *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point through August 23, 2013, the date of the decision.  (PageID.50–51.)

## DISCUSSION

Plaintiff presents the following claims of error:

1. The decision omits the evidence of the frequency of the migraine headaches;

2. The decision fails to weigh the opinion of a treating physician; and

3. The decision assesses residual functional capacity without consideration for the frequency and severity of the migraine headaches.

(PageID.847.)  The Court will discuss the issues below.

5

**1.**

The ALJ's decision followed the five step sequential analysis. As part of this analysis, the ALJ determined that Plaintiff's migraine headaches were a severe impairment because they caused "more than a minimal limitation of the claimant's ability to perform basic work activities." (PageID.41.) Later, at step four, the ALJ determined Plaintiff's impairments, including her migraine headaches, led to an RFC of an ability to perform a limited range of light work. (PageID.48.) *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware . . . when we assess your residual functional capacity."). The ALJ's step four determination included a lengthy discussion of the medical record, including Plaintiff's migraines. (PageID.44–49.) In addition to discussing objective test results and treatment notes, the ALJ discussed Plaintiff's subjective statement that she experiences migraines twice a week, and that they last for up to six hours. (PageID.47.) While not directly cited, it appears the ALJ was referring to an April 12, 2013, treatment note from Dr. Jill Miedema. (PageID.827.) Plaintiff argues, however, that there are numerous other portions of the record that refer to Plaintiff's headaches, and the ALJ's failure to discuss these other portions of the record constitute error requiring reversal. The Court disagrees.

It is patent that an ALJ is not required to explicitly discuss every piece of evidence in the record. "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.'" *Kornecky v. Comm'r*

*of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)). That is precisely what the ALJ did here. The ALJ began her decision by stating that she had carefully considered all of the evidence, and followed it up with a lengthy discussion of the medical record. (PageID.39, 44–49.) The additional records provided by Plaintiff do not affect the ALJ's conclusion regarding the frequency of Plaintiff's headaches. This is so because many of the notes Plaintiff argues the ALJ should have explicitly discussed largely mirror Dr. Miedema's statement that Plaintiff reported experiencing headaches two times a week. (PageID.529, 753, 790.) To the extent Plaintiff argues her headaches were actually more frequent, the ALJ was allowed to resolve the inconsistencies. *See Garner*, 745 F.2d at 387.

Plaintiff's reliance on *Howard v. Commissioner of Social Security* is misplaced. In that case, the ALJ discounted a treating physician's opinion because the opinion was supposedly not based on clinical or laboratory findings, when in fact they were based on over a year's worth of treatment notes containing exactly such findings. 276 F.3d 235, 239 (6th Cir. 2002). The ALJ in this case made no such error. There is no indication that the ALJ rejected the pieces of evidence identified by Plaintiff, and the fact that the ALJ did not explicitly discuss them does not lead to that conclusion. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). Accordingly, Plaintiff's first claim of error is rejected.[3]

---

[3]The Court notes Plaintiff refers in a perfunctory way to regulations and portions of the record that might challenge the ALJ's credibility and step five conclusions. The Court declines to address these arguments in this claim of error, however, as they are superficially raised at best. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

**2.**

On March 12, 2012, Dr. Joseph M. Corey wrote a letter regarding his treatment of Plaintiff for her migraines:

> This patient has been known to me for several years now. I do believe that she has been having chronic migraines, defined as migraine attacks occurring on at least 15 days per month with headaches last[ing] longer than four hours each day. This has been going on for at least six months now.
>
> I have referred her for botox therapy for these headaches, as she has been refractory to her medications, and I believe that she may have a good response with the botox.

(PageID.777.) Plaintiff claims that in this, Dr. Corey was expressing an opinion that Plaintiff was limited to an extent greater than that found by the ALJ, and the ALJ erred by failing to discuss this opinion and incorporate it into the RFC. That is, Plaintiff argues the ALJ erred in failing to provide "good reasons" for discounting Dr. Corey's opinion under the treating physician rule.

The treating physician rule recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It appears undisputed that Dr. Corey qualifies as a treating physician.

The deference accorded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human*

8

*Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The ALJ's treatment of Dr. Corey's statements consists of a single statement that frames Dr. Corey's letter as a recitation of Plaintiff's subjective allegations. The ALJ notes, that Plaintiff "reported working with a neurologist . . . and had several medications for prevention, but none really worked." (PageID.47.) Plaintiff argues that this treatment is insufficient to satisfy the treating physician rule. However, the deference to a treating physician applies only if a treating source offers a medical opinion. Thus the crux of the matter is whether the statements by Dr. Corey,

9

quoted above, constitute a medical opinion as that term is contemplated by the relevant regulations. Such regulations define a "medical opinion" as statements that "reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Defendant argues that Dr. Corey's statements do not satisfy this regulation. Plaintiff, however, argues that Dr. Corey espoused two opinions: Plaintiff's medication was ineffective, and Plaintiff experienced headaches at least 15 times a months, each lasting for four hours in duration. Plaintiff argues these are opinions that reflect judgments about the severity of Plaintiff's impairment. (PageID.887.) This is a close case, however the Court agrees with Plaintiff that Dr. Corey offered a medical opinion, and thus the ALJ failed to properly assess Dr. Corey's letter.

What is apparent from a review of Dr. Corey's letter is that the doctor believed Plaintiff's medications were no longer helping Plaintiff control her migraines. (PageID.777.) At minimum, this is a judgment about the severity of Plaintiff's impairments–namely that Plaintiff's condition, and course of treatment, had progressed to the point that Dr. Corey believed Plaintiff needed treatment beyond oral medication. As such, Dr. Corey's statement regarding the severity of Plaintiff's migraines constitutes a medical opinion. Because Dr. Corey qualifies as a treating physician the ALJ was required, in turn, to provide "good reasons" for giving this opinion less than controlling weight. While the ALJ discussed other evidence that seemingly indicated Plaintiff's condition improved with medication, she did not resolve the inconsistency between Dr. Corey's statement and the record, nor provide "good reasons" for failing to give the opinion controlling weight. (PageID.47.) Aside from a violation of the treating physician rule, the failure to adequately

discuss this opinion is all the more important in light of the fact that the ALJ seemingly relied on contradictory portions of the record–those stating Plaintiff's migraines were controlled with medication–to conclude Plaintiff's migraines, once controlled, did not prevent her from performing a limited range of light work. (PageID.47.) Thus the ALJ's violation of the treating physician rule cannot be said to amount to harmless error. Accordingly this matter will be remanded to the Commissioner for further consideration. On remand, the Commissioner is instructed to consider Dr. Corey's March 12, 2012, opinion under the treating physician rule.

**3.**

Plaintiff finally argues that the RFC, and the corresponding hypothetical to the VE at the administrative hearing, are unsupported by substantial evidence due to four distinct reasons.

Plaintiff first claims that the ALJ erred because "The RFC assessment adds 'walking on uneven surfaces' as an environmental motion trigger to her headaches." Plaintiff argues there is no support for a finding that her migraines were triggered by walking on such surfaces. (PageID.865.) Plaintiff, however, is incorrect that this limitation was included because of her migraines. In fact, as recorded by the ALJ, it was Plaintiff's "lower extremity impairments," not her migraines, that "preclude walking on uneven surfaces." (PageID.48.) The ALJ, having found that the degenerative changes to Plaintiff's right foot constituted a severe impairment, did not err in assigning a limitation for this impairment.

Next, Plaintiff claims that while the RFC included some limitations to help her avoid those things that triggered her migraines, it did not include a limitation for her stress, which was also a trigger. (PageID.866.) Again, a close reading demonstrates that this is incorrect. The ALJ explicitly stated she was including a limitation for stress. ALJ Grit determined that Plaintiff's

11

"mental impairments of *posttraumatic stress disorder/anxiety*, depression, and a history of substance abuse *limit her* to understanding, remembering and performing only simple tasks, making simple work-related decisions and adjust to routine changes in the work place; must have no interaction with the public; and, limited to less than frequent interaction with co-workers and supervisors." (PageID.48) (emphasis added.) While perhaps not worded as Plaintiff would like, it is clear the ALJ included limitations in the RFC that allowed for Plaintiff to avoid stressful situations.

Plaintiff's third and fourth arguments raise the same alleged flaw, which at bottom, is that the RFC is deficient because it failed to adopt Plaintiff's subjective statements regarding her migraines. (PageID.866.) Specifically, Plaintiff claims that even if she avoids her triggers, she still experiences debilitating headaches that lead to weekly absences from work. (PageID.866.)

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ based the portion of the RFC regarding the environmental restrictions on the opinion of the state agency medical consultant, Blaine Pinare, Ph.D., who stated Plaintiff needed

13

to avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, ventilation and other hazards. (PageID.204–205, 208.)  This she was allowed to do.  See 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation").  Plaintiff also testified that smells, temperatures, being out in the sun, and how well she previously slept or ate are triggers for her headaches. (PageID.114.)  While finding Plaintiff's testimony, specifically as to the frequency of Plaintiff's migraines, to be partially credible, the ALJ found that Plaintiff's testimony regarding the severity of her symptoms was not. (PageID.48–49.)  Plaintiff's therapy, church attendance, and work as a cashier all undercut her claim that she was as impaired as alleged.  As noted above, the evidence simply fails to support Plaintiff's allegations that her impairments are disabling or limit her to the extent alleged.  The ALJ's decision, therefore, to discount Plaintiff's subjective allegations is supported by substantial evidence.

Plaintiff wraps up the related claims in a related argument that the Commissioner's step five conclusion is unsupported by substantial evidence.  As noted above, at step five the ALJ determined Plaintiff could perform a significant number of jobs, and based this determination on the VE's response to a hypothetical question posed by the ALJ at the administrative hearing.  A VE's testimony in response to an accurate hypothetical may provide substantial evidence at step five that the claimant is able to perform a significant number of jobs.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  This claim of error is related to the above claims in that Plaintiff argues the ALJ's hypothetical was inaccurate because it did not incorporate some of the opinions in the record.  An ALJ is required to incorporate only those limitations which she finds credible and supported by the record into the hypothetical.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235

(6th Cir. 1993). The Court is already remanding this case for further consideration of Dr. Corey's opinion. If, on remand, the Commissioner's RFC determination changes, the Court is satisfied the Commissioner will re-examine the step five evaluation.

Finally, while the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also, Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also, Brooks*, 531 F. App'x at 644. Evaluation of Plaintiff's claim requires the resolution of certain factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g). This matter is remanded for further factual findings, including but not necessarily limited to, an accurate assessment of Dr. Corey's March 12, 2012, opinion.

A separate judgment shall issue.

Dated:   March 28, 2016              /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE